■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES AHEARN, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County, dated April 12, 1977, which, after a hearing, granted defendant's motion to suppress a gun and credit card seized from him. Order reversed, on the law and the facts, and motion denied. On January 11, 1976, at about 8:45 P.M., shortly after snow had started falling, Officer John Crean, a veteran of 8½ years with the New York City Police Department (and the *only* witness to testify at the suppression hearing), was driving his

patrol car eastbound on Broadway at about 46th Street, Queens, when he observed defendant-respondent drive past in the opposite direction (westbound). Crean's attention was drawn to defendant's car because the color of the New York State registration and inspection stickers showed that they had expired. Crean made a U-turn and had defendant stop his vehicle. At Crean's request, defendant emerged from his car. Crean asked him for his license and registration and defendant replied that he had left them home. When asked for other identification, defendant started to thumb through his wallet. Crean noticed a credit card and suggested to defendant that the card should have his name on it. Defendant replied that it belonged to his cousin. He did, however, produce an identification card from St. Vincent's Hospital bearing his name and picture. This satisfied the officer that defendant was in fact James Ahearn. However, Crean had not yet established whether the car had been stolen, or whether defendant was licensed to drive. Crean desired to use the police radio to make an "NCIC" computer check. As noted, it was snowing and the snow was falling "rather heavy". Accordingly, Crean directed defendant to sit in the back seat of the patrol car. Defendant complied. He was wearing dungarees which were "very tight when he sat down." Crean entered and sat in the driver's seat. In that course of eliciting information for the radio check, Crean turned his head and suddenly noticed a bulge in defendant's right pants leg ("right thigh"); the bulge was "approximately four inches long and approximately three inches wide on one end, down to an inch on the other end." Crean "believed [the bulge] was a gun". He exclaimed to his partner, "Christ, he got a gun", exited the patrol car, opened the rear door and covered defendant while his partner "reached over the seat and retrieved the weapon from the defendant." In connection with his belief that the bulge was a gun, Crean testified: "THE COURT: * * * By the way, officer * * * when you saw a bulge over there, you thought the bulge was a gun? THE WITNESS: I knew it was a gun. I just felt it. THE COURT: It was your hunch it was a gun? THE WITNESS: Yes." The weapon retrieved was a .25 caliber automatic pistol containing four live rounds of ammunition. Its *actual* dimensions were "approximately four inches long at its longest point, three inches wide at its widest point at the handle, approximately an inch wide at the end of the barrel". The distance "from the tip of the barrel to the bottom of the base of the gun on diagonal" was five inches. The pistol was small enough to fit within the palm of one's hand. Upon the seizure of the gun, defendant was arrested and the credit card taken. On May 26, 1976 he was indicted for (1) criminal possession of a weapon (a loaded pistol) in the third degree, (2) criminal possession of stolen property (the credit card of one Jose Beltran) in the second degree and (3) violating section 401 (subd 1, par a) of the Vehicle and Traffic Law (operating an unregistered motor vehicle). In our opinion, the police action was reasonable under the circumstances of this case and the motion to suppress should have been denied (see *People v Goings*, 41 NY2d 759). While Crean and defendant were standing in the heavily falling snow, Crean had not yet established whether the vehicle driven by defendant with expired registration and inspection stickers was stolen or whether the defendant, who carried another's credit card, and who allegedly had left his license home, was in fact a licensed driver. Accordingly, it was reasonably necessary for Crean to enter the patrol car and to keep defendant there during the radio transmission. Upon turning around in the close confines of the patrol car, before any of these questions had been resolved, Crean suddenly noticed in the seated defendant's tight pants, a bulge which, to this 8½-year veteran of the police force, spelled "gun"—as indicated by his totally spontaneous

exclamation of alarm and sudden exiting from the car and covering defendant with his own gun. The spontaneity of Crean's conduct establishes that he was in fact apprehensive for his own safety. On all of the facts, Crean and his partner had reasonable cause to be apprehensive and to take the action that they did, resulting in the seizure of the loaded gun from defendant's pocket (see *People v Goings, supra)*. We note that at the conclusion of the suppression hearing the court remarked: "I will tell you right now on the issue of credibility, I believe everything the police officer says. I believe he had the ability to recognize the expired registration by looking at the color of the sticker. There is no question about that. And, I think it could be done at 40 miles an hour in snow, so there is no question about that, too." The court in *People v Goings (supra, p 761)* noted that "much weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses". We agree with the suppression court's conclusion that Officer Crean's testimony was wholly credible and believable. We find further that, at bar, the police conduct must be deemed reasonable when weighed in the light of the following factors enumerated in *Goings* (pp 761-762): "The ultimate determination will depend on a balancing of the legitimate interests of the defendants against the reasonableness and appropriateness of the police action. At least three aspects of each individual transaction should be considered. Was there proof of a describable object or of describable conduct that provides a reasonable basis for the police officer's belief that the defendant had a gun in his possession? Was the manner of the officer's approach to the defendant and the seizure of the gun from him reasonable in the circumstances? Was there evidence of probative worth that there had been a pretext stop and frisk or that the police were otherwise motivated by improper or irrelevant purpose? There will be other material considerations, too, in individual cases. Because the totality of the circumstances in each case is necessarily unique, there should be no expectation that comparable significance will always attach to the same or similar factors in different cases." We also note that, at bar, the lead case cited by the suppression court in its decision, dated April 12, 1977, was the First Department's determination in *People v Goings* (51 AD2d 901 [decided March 1, 1976]), which was reversed by the Court of Appeals on June 2, 1977. Hopkins, J. P., Margett, Damiani and O'Connor, JJ., concur.