STATE of North Dakota, Plaintiff and Appellee,

v.

Gary PATTEN, Defendant and Appellant.

Crim. No. 975.

Supreme Court of North Dakota.

June 28, 1984.

Patricia L. Burke, Asst. State's Atty., Bismarck, for plaintiff and appellee State of North Dakota.

LaRoy Baird, of Rosenberg & Baird, Bismarck, and Gary Patten, pro se, for defendant and appellant.

VANDE WALLE, Justice.

Gary Patten appealed from a judgment of conviction of the county court, Burleigh County, which found him guilty of defrauding a secured creditor. We affirm.

In 1979 the State Bank of Burleigh County, known as "United Bank" since 1982, agreed to loan Patten and his wife $55,200 in order to aid them in paying a loan from another bank. The security agreement for this loan included, among other things, all livestock then owned or thereafter acquired as collateral. A financing statement was filed in Burleigh County. In 1980 and in 1981 United Bank renewed this note and provided that the 1979 security agreement was included as collateral securing the renewals. Also in 1981 United Bank prepared a new note for Patten for purchasing livestock. The 1979 security agreement and a security interest in the purchased cattle were the collateral for this livestock loan. Both loans were due in December 1981, but were extended until June 1982. In June 1982 the livestock loan was renewed, with the balance of the loan due December 20, 1982. The 1979 security agreement, which was part of the collateral for the livestock loan, provided that United Bank had an interest in proceeds of all secured property.

Prior to the renewal of the livestock loan in June, Patten sold some of the mortgaged cattle in May 1982. John Keeley, vice president of United Bank, testified that with the Bank's consent, Patten used the proceeds from the sale of the cattle to purchase a money-market certificate, which is listed as collateral for the June livestock note renewal. Patten, however, testified that he placed the proceeds from the May cattle sale in a separate "savings account" and that Keeley agreed that proceeds from subsequent sales would not be applied to the livestock note.

Patten testified that on about July 15, 1982, he spoke to Keeley about United Bank's granting a car title solely to his estranged wife, even though he paid the debt that was jointly held. Later that month he sold some of the mortgaged cattle at Napoleon Livestock Auction, located in Logan County, and cashed the check, which was for about $2,700. George Bitz, secretary of Napoleon Livestock Auction, testified that in August United Bank asked him to stop payment on the check. Bitz said that he attempted to stop payment, but discovered that the check had been cashed.

In August 1982 Patten sold more of the mortgaged cattle at Kist Livestock Auction, located in Morton County. He received a check, but before he could cash it United Bank requested Kist Livestock Auction to stop payment. Kist Livestock Auction then issued a check payable to United Bank and Patten. According to Keeley, the reissued check was deposited with a court because Patten refused to endorse it.

Keeley testified that he knew that Patten had sold some mortgaged cattle and that he had about four conversations with Patten in which he told him to apply the proceeds of the sales to the loan. On September 22, 1982, Keeley wrote Patten a letter requesting Patten to endorse the check from Kist Livestock Auction and to apply the proceeds from the Napoleon Livestock Auction to the livestock loan. Keeley stated in the letter that Patten was delinquent in his loans and that he wanted Patten to inform him of the location of some missing mortgaged cattle. Richard Hurdelbrink, a former loan officer at United Bank, testified that he was present during the conversations that occurred in August and September. He agreed that Patten was notified that he was to apply the proceeds to the loan, but that Patten refused because of his dissatisfaction with United Bank. Both Hurdelbrink and Keeley testified that although Patten never denied that the proceeds belonged to United Bank he refused

to apply the proceeds unless United Bank fulfilled certain conditions. Patten wanted United Bank to help him with his car problem and wanted a release of the proceeds, believing that the remaining collateral was sufficient security. According to Patten, having the proceeds in his name alone would aid him when a court in a divorce action distributed property.

Patten testified that he told Keeley that the missing mortgaged cattle were on his rented pastureland. Patten admitted that he never deposited the proceeds from the Napoleon Livestock Auction in his "savings account" and that he left North Dakota in October 1982 and returned in February 1983.

In October 1983 the jury found Patten guilty of defrauding a secured creditor. The judge sentenced Patten to 90 days at the State Farm, with the sentence to run consecutively to the sentence he is serving at the State Penitentiary involving a conviction of a different offense.

On appeal Patten contends that the trial court lacked jurisdiction because the action was not properly venued in Burleigh County; that the criminal complaint was improper and untimely; and that the trial court erred in determining that his sentence should run consecutively, not concurrently.

### I

Section 29–03–04, N.D.C.C., provides:

"29–03–04. *Part committed in different counties—Jurisdiction in either.* —When a crime or public offense is committed in part in one county and in part in another, or when the acts or effects thereof constituting, or requisite to the consummation of, the offense occur in two or more counties, the jurisdiction is in either or any of said counties."

The issue of jurisdiction under Section 29–03–04 entails consideration of the elements of the charged offense and the place or places where the offense occurred. See, e.g., *State v. York*, 326 N.W.2d 208 (N.D. 1982); *State v. Rohweder*, 305 N.W.2d 25 (N.D.1981); see generally Rule 18, N.D.R. Crim.P.

In the present case Patten was charged with defrauding a secured creditor, in violation of Section 12.1–23–08, N.D.C.C.[1] Section 12.1–23–08 provides that a person is guilty of defrauding a secured creditor "if he destroys, removes, conceals, encumbers, transfers, or otherwise deals with property subject to a security interest with intent to prevent collection of the debt represented by the security interest." Patten contends that the alleged crime did not occur in Burleigh County because the selling of the cattle occurred in Morton and Logan Counties. We disagree.

▄▄▄ Patten testified that United Bank had suggested that he sell his livestock because of his divorce proceedings. The mortgaged cattle were kept in Burleigh County on Patten's pastureland and there they were loaded for transportation to the Kist and Napoleon livestock auctions. After United Bank learned that Patten had sold cattle at the auctions, it did not object to the sales but rather to Patten's refusal to apply the proceeds to the livestock loan. The discussions between United Bank and Patten about applying the proceeds to the livestock loan occurred in Burleigh County. Patten, who lived in Burleigh County until he left in October 1982, cashed the check from the Napoleon Livestock Auction at United Bank, located in Burleigh County. Patten's refusal to apply the proceeds to the livestock loan, which originated in Burleigh County, was an act that demonstrated his intent to prevent the collecting of a debt represented by a security interest, in violation of Section 12.1–23–08. Considering all these circumstances, we therefore hold that the action was properly venued in Burleigh County.

---

1. In 1983 the Legislature enacted a statute requiring a seller of farm products to disclose on a certificate of ownership, which is provided by a merchant, the names of parties having a security interest in the farm products. See Section 41–09–28 (U.C.C. 9–307), N.D.C.C. An untrue statement on the certificate constitutes a Class C felony if the value of the property exceeds $500 or a Class A misdemeanor if the property is of lesser value.

## II

Patten argues that the criminal complaint was improper and untimely because his refusal to apply the proceeds was not unlawful. Patten maintains that he had an agreement with United Bank that he could place the proceeds in a separate savings account. And, in the alternative, even if there was no agreement, United Bank, which filed its complaint on November 18, 1982, should have waited to file its complaint until December 20, 1982, the date the livestock loan was due.

 The issue of whether or not there was an agreement between Patten and United Bank was a question of fact for the jury. We will reverse a decision of a jury only if the record presents no substantial evidence to support the verdict. See *State v. Lind*, 322 N.W.2d 826 (N.D.1982). We consider the evidence most favorable to the verdict and its reasonable inferences; we do not weigh conflicting evidence, nor do we judge the credibility of the witnesses. See *State v. Flamm*, 338 N.W.2d 826 (N.D. 1983).

 Both Keeley and Hurdelbrink denied that there was an agreement to let Patten keep the proceeds until December 20, 1982. The letter Keeley sent Patten corroborates Keeley's and Hurdelbrink's testimony. In addition, Keeley testified that if Patten had placed the proceeds in a money-market certificate, United Bank would have accepted the certificate as a pledge. The renewal of the livestock loan in June 1982, which had as collateral the proceeds from the May cattle sale in the form of a money-market certificate, suggests that United Bank would have allowed Patten to use in a similar fashion the proceeds from the July and August cattle sales. We believe that there is sufficient evidence to support the jury's finding that there was no agreement to release the proceeds to Patten. The complaint thus was not improper.

 Patten also argues that the date the livestock loan was due was the earliest permissible date for filing the complaint.

The June 1982 renewal note states, "In the event the payee [United Bank] at any time deems itself insecure, then the payee ... at its option and without notice may (1) demand immediate payment of all indebtedness due the payee, together with interest thereon; ... and (3) exercise all legal remedies available hereunder and in any of the foregoing instruments and documents." A clause for acceleration of payment is permitted by law provided the payee in good faith deems himself insecure. See Section 41–01–18 (U.C.C. 1–208), N.D.C.C. Under the terms of the renewal United Bank could accelerate the payment if it was, in good faith, insecure. United Bank did not demand payment in full, but rather it sought to protect its interest in the cattle sold in July and August. The evidence presented at trial supports a conclusion that Patten had notice that United Bank wanted the proceeds applied to the livestock loan. Patten nevertheless wanted to use the proceeds to compel United Bank to help him with his car title problem and with his divorce proceedings. Patten also failed to notify United Bank of the location of some mortgaged cattle after receiving a letter of inquiry. In addition, after Patten left North Dakota in 1982, United Bank was unable to discuss further the use of the proceeds. Under these circumstances, the filing of the complaint was timely because United Bank was justifiably insecure.

## III

Patten argues that the trial court erred in determining that his 90-day sentence for defrauding a secured creditor, a Class A misdemeanor, should run consecutively to, not concurrently with, his sentence for delivery of a controlled substance, a felony. He maintains that Sections 12.1–32–11 and 12.1–32–02(6), N.D.C.C., and logic prohibit the imposition of a consecutive sentence.

 In *State v. Mees*, 272 N.W.2d 61 (N.D.1978), this court examined the relationship of Section 12.1–32–11 to Section 12.1–32–02(6). We concluded that, although subsection 1 of Section 12.1–32–11 provides for concurrent sentencing when

crimes are committed in the same State, the clause "[u]nless the court otherwise orders" creates an exception and thus permits a court to impose a consecutive sentence. See generally *State v. Rudolph*, 260 N.W.2d 13 (N.D.1977). Absent a statute to the contrary, it is within the trial court's discretion to determine if a sentence should run concurrently with or consecutively to another sentence. See *State v. Rudolph, supra.* In addition, we reject Patten's argument that Section 12.1–32–11(3) is relevant because this section discusses sentencing when a defendant has committed only misdemeanors; in the present case Patten was convicted of a misdemeanor and had been previously convicted of a felony.

The trial court found that Patten's failure to assume responsibility for his conduct and the likelihood of future offenses supported its decision to impose a consecutive sentence. We do not believe that the trial court abused its discretion.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.