STATE of North Dakota, Plaintiff and Appellee,

v.

Jeffrey KIMBALL, Defendant and Appellant.

Cr. No. 1014.

Supreme Court of North Dakota.

Jan. 23, 1985.

Lee A. Christofferson, State's Atty., Rolla, for plaintiff and appellee.

Benson Law Office, Bottineau, for defendant and appellant; argued by A. Swain Benson, Bottineau.

GIERKE, Justice.

This is an appeal from a verdict following a bench trial finding Jeffrey L. Kimball guilty of driving while intoxicated in violation of North Dakota Century Code § 39–08–01.

On 27 October 1983 Kimball, while driving on a public highway, was involved in a one-car accident. The accident occurred between 10:00 p.m. and 11:15 p.m. The precise time of the accident was not established.

A Bottineau County deputy sheriff happened upon the accident while on routine patrol. Kimball had sustained injuries from the accident and the deputy sheriff took him to the Bottineau hospital.

Richard Hummell, a North Dakota Highway Patrol officer, was notified by the Bottineau County sheriff's office of Kimball's accident and that it appeared to be alcohol-related. Hummell proceeded to the Bottineau hospital. Hummell testified that while speaking with Kimball he detected an odor of alcohol on his breath, that his speech was slurred and eyes bloodshot. At that point Hummell arrested Kimball for driving while intoxicated.

At 12:15 a.m. a nurse drew a blood sample from Kimball from which the North Dakota State Toxicologist determined he had a 0.11 percent blood alcohol concentration by weight.

At Kimball's trial the State introduced the state toxicologist's analytical report. Kimball objected to the admission of the report on the grounds that his blood was not drawn within two hours of his driving, as required by NDCC §§ 39–08–01 and 39–20–07(3), and that it was drawn without his consent. The trial court overruled these objections and convicted Kimball of driving while intoxicated. Kimball appealed.

Kimball's first contention on appeal is the trial court erred in admitting as evidence the results of his blood test. Kimball maintained the test results were inadmissible because the State failed to establish the test was performed within two hours of his driving.

NDCC § 39–08–01(1)(a) provides:

"1. A person may not drive any vehicle upon a highway or upon public or private areas to which the public has the right of access for vehicular use in this state if any of the following apply:

a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving."

 It is undisputed Kimball's blood test was performed at 12:15 a.m. on 28 October, 1983. However, the State conceded it could not establish the test was conducted within two hours of Kimball's driving. Kimball claimed the State's inability to prove its compliance with the two-hour requirement of § 39–08–01(1)(a) precluded the admission of the test results. We cannot agree. It is true that if a chemical test was not performed within two hours of Kimball's driving he could not be convicted of violating § 39–08–01(1)(a). However, Kimball was alternatively charged with violating both § 39–08–01(1)(a) and (b). To convict under § 39–08–01(1)(b) the State must prove beyond a reasonable doubt a person was driving a vehicle upon a highway while under the influence of intoxicating liquor. Section 39–08–01(1)(b), as opposed to (a), does not necessitate a chemical test as a prerequisite for conviction. *State v. Shipton*, 339 N.W.2d 87 (N.D.1983). Only two elements need be proved to convict under (b): (1) the defendant was driving a vehicle upon a public highway; and, (2) that while driving he was under the influence of intoxicating liquor so as "not to possess the clearness of intellect and control of himself that he would otherwise have." *State v. Halvorson*, 340 N.W.2d 176, 178 (N.D.1983).

That is not to say chemical test results cannot be used to help prove a person was driving while intoxicated in violation of § 39–08–01(1)(b). See *State v. Engebretson*, 326 N.W.2d 212 (N.D.1982) NDCC § 39–20–07 governs the admissibility and interpretation of chemical test, and reads in part:

"Upon the trial of any ... criminal action ... arising out of acts alleged to have been committed by any person while driving ... a motor vehicle while under the influence of intoxicating liquor ... evidence of the amount of alcohol ... in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood ... is admissible. For purposes of this section:

. . . . .

"2. Evidence that there was at that time more than five one-hundredths of one percent by weight of alcohol in the person's blood is relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of intoxicating liquor.

"3. A person having a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving ... is under the influence of intoxicating liquor at the time of driving ...." [1]

In this case Kimball's blood alcohol concentration was 0.11 percent by weight and this evidence was admissible to prove his violation of § 39–08–01(1)(b) as relevant evidence pursuant to § 39–20–07(2). It is therefore of no import that the State cannot establish the test was performed within two hours of Kimball's driving.[2]

---

1. Section 39–20–07 stipulates that before the results of chemical analysis can be received into evidence it must be shown the sample was "properly obtained and the test was fairly administered." Kimball did not claim the test was not fairly administered and therefore we need not address the issue. See *State v. Guthmiller*, 350 N.W.2d 600 (N.D.1984).

2. Actually the time delay between Kimball's driving and the taking of his blood likely served

to reduce his blood alcohol concentration. The time elapsed since drinking is an important factor because from the beginning of the ingestion of alcohol the body's metabolism causes a virtually uniform rate of its clearance from the blood. Thus it is a matter of common knowledge that the intoxicating effects of alcohol diminishes with the passage of time. See Irwin, Defense of Drunk Driving Cases, § 15.01 (3 ed.); *State v. Kaloustian*, 212 N.W.2d 843

■ In this case there was sufficient evidence, see *State v. Manke,* 328 N.W.2d 799 (N.D.1982); *Engebretson, supra,* both in the form of the test results and the law enforcement officer's testimony, that Kimball was driving under the influence of intoxicating liquor in violation of § 39–08–01(1)(b).[3]

Kimball's final argument is that the results of his blood test should have been suppressed as a product of an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 8 of the North Dakota Constitution.

■ The extraction of Kimball's blood to determine his blood alcohol concentration is a search within the meaning of the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Abrahamson,* 328 N.W.2d 213 (N.D.1982). The Fourth Amendment protects against unreasonable searches. Generally all searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to this rule. *State v. Larson,* 343 N.W.2d 361 (N.D. 1984) *State v. Matthews,* 216 N.W.2d 90 (N.D.1974). One of the exceptions to the warrant requirement is a search incident to an arrest.[4] *State v. Klevgaard,* 306 N.W.2d 185 (N.D.1981).

■ A sample of Kimball's blood could properly be taken as a search incident to his arrest, notwithstanding his lack of consent or objection, if two conditions set forth in *Schmerber v. California, supra* were met.

First, in searches which intrude beyond the body's surface, human dignity and privacy, which are interests protected by the Fourth and Fourteenth Amendments, forbid such intrusions on the mere chance that desired evidence might be obtained. Rather, there must be a *clear indication* that in fact such evidence will be found to justify an immediate warrantless search. *Schmerber, supra.* The immediate extraction of Kimball's blood was justified because we, as was done by the *Schmerber* Court, have taken notice that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. *Schmerber, supra;* footnote 2, *supra.*

In this case Officer Hummell stated Kimball behaved in a manner indicating intoxication; i.e., an odor of alcohol on his breath, slurred speech, bloodshot eyes, and his involvement in an auto accident. Consequently there existed a clear indication a

---

(N.D.1973); and *In re Martin,* 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801 (1962).

**3.** Kimball asserted that a New York case, *People v. Brol,* 81 App.Div.2d 739, 438 N.Y.S.2d 424 (Ct.App.N.Y.1981), would be relevant to our decision. In *Brol* the court determined that under a New York statute if a chemical test was not taken within two hours of *arrest* it could not be received into evidence. However, as distinguished from NDCC § 39–08–01(1)(a) and § 39–20–07(3), the New York statute required the chemical test to be performed within two hours after *arrest,* and not after *driving,* as is required in North Dakota. The significant difference between the time of arrest and driving demonstrates the inapplicability of *Brol* to the facts present here.

**4.** Kimball claims the extraction of his blood constituted an unreasonable search, and therefore violated the Fourth and Fourteenth Amendments and should be surpressed, because he did not consent to the search. See *State v. Abrahamson,* 328 N.W.2d 213 (N.D.1982). Kimball's argument is misdirected. His lack of consent was irrelevant because the warrantless taking of his blood could be justified under the search incident to an arrest and not as a consent search exception. However, it is important to recognize that Kimball's failure to affirmatively refuse to submit to the blood test limits the scope of this opinion. Under the North Dakota implied consent statutes a person has the right to refuse to submit to a blood alcohol test. NDCC § 39–20–04. If Kimball had refused to submit to the extraction of his blood § 39–20–04 would prohibit introducing the test results as evidence regardless if his blood was taken pursuant to a *Schmerber*-type search incident to an arrest. In other words, if a person refuses to submit to a blood alcohol test, but such a test is nevertheless conducted, the tests results are not admissible as the fruit of a valid search incident to an arrest because of the operation of NDCC § 39–20–04.

blood sample from Kimball would produce evidence of his blood alcohol concentration. Additionally, the unknown period of time which had elapsed since Kimball's accident presented Officer Hummell with an emergency in which the delay necessary to obtain a warrant threatened the destruction of evidence. *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919–920. These exigent circumstances justified the immediate warrantless taking of Kimball's blood sample under the first *Schmerber* condition.

The second condition required by *Schmerber* is that the blood test be performed in a reasonable manner. *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. Kimball's blood was drawn by a registered nurse in a hospital according to accepted medical standards. We therefore conclude Kimball's blood was extracted in a reasonable manner.

Kimball was arrested for driving while intoxicated and his blood sample was taken in a reasonable manner, based upon a clear indication it would produce evidence of his intoxication, evidence which might disappear or dissipate if not immediately obtained. Given these facts we hold the two conditions required by *Schmerber* were satisfied and that the taking of Kimball's blood sample was an appropriate search incident to his arrest. Accordingly, we affirm the trial court's judgment of conviction.

PER CURIAM.

Most of the foregoing opinion is the work of SAND, J., deceased, with additions by GIERKE, J., to whom it is formally attributed because of inclusion of language not originating with Justice Sand.

ERICKSTAD, C.J., VANDE WALLE, J., and PEDERSON, SURROGATE Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, NDCC.