STATE of North Dakota, Plaintiff
and Appellee,

v.

Lonny Lynn MERTZ, Defendant
and Appellant.

Cr. No. 1006.

Supreme Court of North Dakota.

Feb. 13, 1985.

Jay V. Brovold, State's Atty., Medora, for plaintiff and appellee State.

John E. Adams, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Lonny Mertz appealed from the criminal judgment entered by the county court, Billings County, on February 27, 1984, convicting Mertz of driving a motor vehicle while under the influence of alcohol. We affirm.

At approximately 1:16 a.m. on September 3, 1983, Billings County Deputy Sheriff David Wallace stopped Lonny Mertz for a speeding violation on Interstate Highway 94 east of Fryburg. Officer Wallace's radar unit indicated that Mertz had been traveling 73 m.p.h. in a 55-m.p.h. zone. After Mertz had stopped his vehicle, Officer Wallace walked forward to Mertz's vehicle and asked Mertz to produce his driver's license. Mertz informed Officer Wallace that his driver's license was packed away in his suitcase. Mertz got out of his car, opened the trunk, and showed Officer Wallace his driver's license. Officer Wallace then ordered Mertz to sit in the patrol car. Mertz complied with that order.

Officer Wallace testified that when he confronted Mertz through the window of Mertz's vehicle he recognized Mertz as the individual whom he had seen stumbling off a high sidewalk near a bar in Medora earlier that evening. Officer Wallace testified further that he ordered Mertz to sit in the patrol car so that he could determine if Mertz had been drinking. While they were sitting in the patrol car Officer Wallace issued Mertz the speeding citation. At that time he observed that Mertz's complexion was flushed, that his eyes were bloodshot, and that he had an odor of alcohol. Because of these observations Officer Wallace administered field-sobriety tests to Mertz. When Mertz failed these tests Officer Wallace placed Mertz under arrest for driving while under the influence of alcohol [hereinafter D.U.I.].

Officer Wallace subsequently transported Mertz to the Dickinson Law Enforcement Center for administration of a blood-alcohol test to Mertz. Officer Wallace testified that after he arrived at the Center he read to Mertz the implied-consent advisory on the request and notice form. Mertz refused to sign that form and stated that he did not understand Section 39–08–01, N.D.C.C. Patrolman John Grasl testified that he then explained Section 39–08–01 to Mertz. Thereafter, Lieutenant Robert Nass administered a Breathalyzer test which established a reading of .17 percent of alcohol in Mertz's blood. Mertz was incarcerated for approximately eight hours and then released.

At trial the State introduced the Breathalyzer test results into evidence. Additionally, Officer Wallace and Patrolman Grasl testified that it was their opinion that Mertz was under the influence of alcohol. The jury found Mertz guilty of D.U.I.

Mertz's first contention on appeal is that Officer Wallace had no authority to order him into the patrol car after stopping him for a mere traffic violation. The essence of Mertz's argument is that Officer Wallace effected a custodial arrest without probable cause by ordering him into the patrol car and that Officer Wallace then conducted an illegal search of Mertz's person in order to establish probable cause for D.U.I. Mertz further argues that all of the State's evidence which was discovered after he was unlawfully seized should have been suppressed by the trial court.

■ The United States Supreme Court in *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607, 614 (1975), stated: "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that a "seizure" within the meaning of the Fourth Amendment occurs any time a peace officer stops an individual and restrains his freedom to walk away, and the Fourth Amendment

requires that such seizure be reasonable. The focus of our analysis in this case centers on whether or not Officer Wallace's order for Mertz to sit in the patrol car was a reasonable seizure and therefore a reasonable invasion of Mertz's personal security. See *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Terry v. Ohio, supra.* In determining reasonableness we balance the public interest with the individual's right to personal security free from arbitrary interference by police officers. *United States v. Brignoni-Ponce, supra.*

■ A police officer may temporarily detain a traffic offender at the scene of a violation. See Sections 39–07–07 and 39–07–09, N.D.C.C. A reasonable period of detention includes the amount of time necessary for the officer to complete his duties resulting from the traffic stop. See *People v. McGaughran,* 25 Cal.3d 577, 159 Cal. Rptr. 191, 601 P.2d 207 (1979). After a lawful stop and during such temporary detention a traffic violator is subject to the arresting officer's authority and restraint until the officer completes issuance of the traffic citation and expressly releases the violator. See *Cantrell v. State,* 561 P.2d 973 (Okla.Crim.App.1977).

The State contends that for the personal safety of a police officer he must have authority to order a driver into his patrol car after a legitimate stop for a traffic violation. We agree that the safety of an officer is a legitimate and weighty concern during the issuance of traffic citations.

In *Pennsylvania v. Mimms, supra,* the United States Supreme Court held that a police officer's order that a driver exit his vehicle after a legitimate stop was reasonable under the Fourth Amendment. In *Mimms* the State argued that the police practice of ordering all drivers from their vehicles was justified because of the State's interest in promoting the safety of police officers. The Supreme Court noted that the policy of ordering all drivers from their vehicles during routine traffic stops addressed two safety concerns of police officers. With the driver positioned out-

side his vehicle (1) the officer could better observe the driver's movements and thus better prevent assaults, and (2) the officer could then proceed with the driver to the side of the road away from the danger of traffic.

The Supreme Court in *Mimms, supra,* balanced these safety concerns against the additional intrusion into a driver's personal liberty occasioned by the order to exit his vehicle. In describing this additional intrusion the Supreme Court stated:

"We think this additional intrusion can only be described as *de minimis.* The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a 'serious intrusion upon the sanctity of the person,' but it hardly rises to the level of a ' "petty indignity." ' *Terry v. Ohio, supra* [392 U.S. at 17, 88 S.Ct. at 1877, 20 L.Ed.2d at 903]. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Mimms, supra,* 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337.

■ We do agree that there is an additional increment of intrusion into a driver's personal liberty when he is ordered into a patrol car. This increased intrusion, however, does not outweigh public-policy concerns for the safety of police officers and in North Dakota, with its varying weather conditions, concerns for the protection of both the officer and driver. Thus it is our view that the Supreme Court's reasoning in *Mimms* should be extended to the facts of this case so as to justify Officer Wallace's action in ordering Mertz into the patrol car during issuance of the speeding citation. We conclude that Officer Wallace's order was reasonable and justified by legitimate

public-policy concerns. See *People v. Ahearn,* 59 A.D.2d 764, 398 N.Y.S.2d 714 (1977); *Cantrell v. State, supra.*

■ Once Officer Wallace had Mertz seated in his patrol car he made the observations about Mertz's appearance that led him to administer field-sobriety tests to Mertz. Those observations together with the results of the sobriety tests gave Officer Wallace sufficient probable cause to arrest Mertz for D.U.I.

Mertz's second argument is that he did not give his consent to have the police administer the Breathalyzer test and that the test results should therefore have been suppressed. Mertz argues that he merely followed Officer Nass's orders in taking the Breathalyzer test. Mertz points to his refusal to sign the request and notice form as support for his contention that he did not give his consent.

The United States Supreme Court decision in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), authorizes State authorities to obtain a blood sample from an individual pursuant to a search incident to arrest, regardless of that person's consent when two conditions are met. The first condition under *Schmerber* is that there must be a clear indication that evidence of blood-alcohol concentration will in fact be found by the search. The second condition is that the State must perform the blood test in a reasonable manner. See *State v. Kimball,* 361 N.W.2d 601 (N.D.1984).

■ Our Legislature has in effect modified the *Schmerber* holding by enacting an implied-consent statute that grants drivers in this State the right to refuse to submit to blood-alcohol tests. See Section 39–20–04, N.D.C.C. Under Section 39–20–04, "[i]f a person refuses to submit to testing under section 39–20–01 or 39–20–14, none shall be given, ..."

■ In order to have effectively withdrawn his implied consent given the State as provided in Section 39–20–01, N.D.C.C.,[1]

1. Section 39–20–01, N.D.C.C., provides that

"[a]ny person who operates a motor vehicle on

Mertz must have affirmatively refused to participate in the Breathalyzer test. See *State v. Kimball, supra.* Mertz testified that he placed the Breathalyzer mouthpiece into his mouth for a few minutes but claims he did not voluntarily breathe into the tube. Nevertheless, Mertz did participate in the test and the results indicated a .17 blood-alcohol content. We therefore conclude that Mertz did not effectively revoke his implied consent to have a blood-alcohol test administered to him. We additionally believe that there was sufficient evidence presented at trial to indicate that Mertz was read the implied-consent advisory required by Section 39–20–01, N.D.C.C. Thus the results of the Breathalyzer test were properly admissible into evidence.

Mertz's final contention is that there was insufficient evidence presented at trial to support the jury's verdict.

When sufficiency of the evidence to sustain a conviction is challenged on appeal, "we do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." *State v. Manke,* 328 N.W.2d

799, 805 (N.D.1982). See also *State v. Patten,* 353 N.W.2d 26 (N.D.1984); *State v. Moore,* 341 N.W.2d 373 (N.D.1983); *State v. Flamm,* 338 N.W.2d 826 (N.D.1983).

We have reviewed the record in this case and we conclude that there is substantial evidence to support Mertz's D.U.I. conviction under Section 39–08–01, N.D.C.C.

Because of our disposition of these issues we need not consider the other issues raised by Mertz.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., GIERKE, J., and PEDERSON and ILVEDSON, Surrogate Justices, concur.

PEDERSON, Surrogate Justice, was a member of this court at the time this case was submitted; ILVEDSON, Surrogate Justice, participated by assignment pursuant to Section 27–17–03, N.D.C.C.

---

a highway ... in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine ..."