**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Bradley V. SOLBERG, Defendant and Appellant.**

**Cr. No. 1129.**

Supreme Court of North Dakota.

Jan. 30, 1986.

A. Fred Arnason, Asst. State's Atty., Grand Forks, for plaintiff and appellee State.

David C. Thompson, of Craft & Thompson, P.C., Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Bradley Solberg appealed from a judgment of conviction of having "a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after being in physical control of a vehicle." Sec. 39–08–01(2)(a), N.D.C.C. Solberg, prior to trial, moved to suppress the test results, arguing that he consented to the breath-alcohol test only on the condition that he also receive a blood test. The trial court denied the motion and Solberg was convicted of the charge. We affirm.

On December 8, 1984, Officer Richard Kuppich checked on a vehicle that was parked on the shoulder of Interstate 29 just outside of Grand Forks with its motor running. Kuppich awoke the driver of the vehicle, Solberg, and had him perform initial sobriety tests. Solberg failed the tests and Kuppich placed him under arrest and began transporting him to the Grand Forks

County Correctional Center. According to Solberg, he informed Kuppich in transit that "if [he] was to take a breathalyzer test, [he] also wanted a blood test because [he] didn't trust breathalyzers." Solberg testified that Kuppich responded, "Don't worry, we'll take care of you." Kuppich, on the other hand, testified that he made no promise to Solberg regarding a blood test and that he could not recall a request for a blood test. He also testified that it was his practice in these types of cases to take all nonhostile persons who request a blood test directly to the hospital for such a test, and that Solberg was nonhostile. Upon arriving at the correctional facility, a breath-alcohol test was administered. Solberg testified that he did not subsequently ask for a blood test; he was taken to a jail cell after the test and was released the following morning. Solberg also stated that after being placed in the cell, he "knocked a few times and nothing happened." According to counsel, this knocking was for the purpose of requesting a blood test, although the record does not contain any evidence as to the purpose of the knocking.

The trial court, following a review of *State v. Mertz*, 362 N.W.2d 410 (N.D.1985), and *State v. Rambousek*, 358 N.W.2d 223 (N.D.1984), denied the motion to suppress because, under the facts of the case, Solberg did not affirmatively request a second alcohol test:

"Now, *State v. Mertz* you must have affirmatively refused to participate in the breathalyzer test. Now, the best the Court sees this, and there's a matter of credibility here too, there could possibly have been some conversation. However, the officer recalls none in the vehicle on the way to the county law enforcement center here.

"... There was no further words at the county law enforcement center. No further demand and *no refusal* of the breathalyzer test. In order to really

have this demand made, I feel that there should be something said and there should be some protest made, certainly, at that point.

.    .    .    .    .

"... The Court feels the demand should be a little stronger than what was said. The officer certainly did not recall any words, 'Yes, we'll take care of you,' in reply to some possible discussion."

Solberg argued that he conditioned his consent to the breath-alcohol test on the promise that he would subsequently receive a blood test. Although a blood test may be required without the consent of the person arrested as a search incident to a lawful arrest [*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ], our Legislature in enacting Section 39–20–04 specified that if a "person refuses to submit to testing under section 39–20–01 or 39–20–14, none shall be given, ..." We have construed this language to require an affirmative refusal of the taking of the test. *Mertz, supra; State v. Kimball*, 361 N.W.2d 601 (N.D.1985).

We need not decide whether or not a consent to a test conditioned on the availability of a second test can be viewed as an affirmative refusal under the rationale of *Kimball* and *Mertz*. The trial court determined that the evidence did not support Solberg's claim that he conditionally consented to the test and thus refused to submit to the test when no second test was given. Our review of the record does not cause us to conclude that the trial court erred in its determination and we therefore affirm.[1]

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

1. Our disposition of this matter makes it unnecessary to consider whether or not suppression of the test results would be a proper remedy if Solberg had affirmatively refused to submit to the test.