STATE of North Dakota, Plaintiff
and Appellee,

v.

Michael David DUBS, Defendant
and Appellant.

Cr. No. 1148.

Supreme Court of North Dakota.

June 26, 1986.

Robert G. Hoy, State's Atty. (argued), and Keith Reisenauer, Asst. State's Atty., Fargo, for plaintiff and appellee.

Edward J. Murphy, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Michael David Dubs appealed from a judgment of conviction of the Cass County district court for robbery, arguing that the evidence was insufficient to support the conviction. We affirm.

When a defendant alleges on appeal that the evidence is insufficient to sustain a conviction, " 'we do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction.' " *State v. Mertz*, 362 N.W.2d 410, 414 (N.D.1985), quoting *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982). This standard is founded on the proper recognition of the distinctive role of the trier of fact—in this case, the trial court—in weighing the evidence. This role necessarily includes application of inferences and subtleties that may be reasonably drawn from the evidence for the purpose of judging credibility and evaluating the essential issues of fact. *State v. Ohnstad*, 359 N.W.2d 827 (N.D.1984).

The evidence, shown in that light and in relation to Dubs, is that in the early morning hours of July 5, 1985, Dubs and two friends, Ronald Huebner and a minor, walked from Dubs's apartment to a Fargo convenience store to buy cigarettes. On the way, Huebner stopped Howard Fischer, who had just ended his workday at a bakery. While Dubs and the minor continued walking to the store, Huebner proceeded to rob Fischer, threatening and assaulting him with a nunchaku,[1] a martial-arts weap-

---

1. A "nunchaku" consists of two round pieces of wood, usually six to eight inches long and an inch in diameter, held together by a chain or piece of rope approximately one foot long. A nunchaku is listed as a dangerous weapon at Section 62.1–01–01(1), N.D.C.C., but is omitted from the listing of dangerous weapons con-

tained in our criminal code, Section 12.1–01–04(6). By its terms, the listing in our criminal code of dangerous weapons is not limited to those items included in the list. See also *State v. Mitchell*, 371 N.W.2d 432 (Iowa App.1985), wherein the court concludes that a nunchaku is a dangerous weapon under Iowa law.

on commonly referred to as a pair of "numb chucks," which he took with him from Dubs's apartment. Fischer was able to flee from the situation and went directly to the police station to report the crime.[2]

After Huebner rejoined Dubs and the minor, they began to walk back to Dubs's apartment. On the way, Huebner noticed James Timian, one of Fischer's co-workers, walking home on the opposite side of the street. Huebner yelled across the street, asking if Timian had any beer. Timian did not respond and kept walking. Huebner asked again, and Timian replied, "No." According to Timian, Huebner then crossed the street, with Dubs and the minor "stringing along" behind Huebner. As Huebner approached Timian, Huebner withdrew the nunchaku from his vest. Timian set down the bag he was carrying and placed his back to the wall of a building. While Huebner swung the nunchaku in front of Timian's face and suggested that Timian should 'give' him the bag, Dubs stood four or five feet to Timian's left. The minor stayed some distance away from the others, his back to them and facing the street area.

The discussion between Huebner and Timian was somewhat extended, with Huebner stating several times that Timian should 'give' the bag to him. As he talked to Timian, Huebner withdrew the nunchaku from his vest and replaced it three times. According to Timian, Dubs told Huebner during the discussion that he "wanted to leave, but kept coming up just about as close as the guy with the numb chucks."[3] Timian testified that he believed that Dubs, by his position, was blocking his way and, by his presence, was a threat. He also construed Dubs's request to leave as a concern about being caught and not as a concern for Timian's welfare. Timian eventually told Huebner that he could have the bag, at which time Huebner took the bag and left. Dubs then approached Timian and asked him the time; Timian answered him. Dubs asked again, and Timian answered again. Dubs asked a third time, and Timian answered, at which point the police, summoned by Fischer, arrived. Huebner, Dubs, and the minor fled from the scene and hid, but were subsequently found by the police.

▮▮▮▮ We believe that this evidence, considered pursuant to the standard we must employ, is sufficient to sustain the verdict. While it is true that our law does not allow a person to be found guilty of robbery merely because of presence at the scene of the robbery [see, e.g., *Zander v. S.J.K.*, 256 N.W.2d 713 (N.D.1977)], reasonable inferences from the evidence support the trial court's conclusion that Dubs's actions were sufficient indication of culpability. Dubs argues that the evidence shows that he was only present and not a participant. This argument was made to the trial court, and rejected. The trial court considered Dubs an accomplice to the crime of robbing Timian. Although the trial court did not delineate the basis of its conclusion, reasonable inferences that Dubs aided Huebner in the commission of the offense can be drawn from Dubs's location during the robbery, his statement that "we should get out of here," his repeated asking for the time of day, and his attempt to escape from the police. In addition, Timian's beliefs as to Dubs's reasons for his allegedly innocent conduct are certainly relevant and are appropriate for consideration by the trial court, primarily because Timian actually observed Dubs's behavior during and after the robbery and was in a position to develop reasonable beliefs based on the more subtle forms of human communication, such as body language and tone of voice. Lastly, the record demonstrates that the trial court placed substantial weight in reaching its conclusion on the credibility and demeanor of the witnesses (including Dubs and Huebner), a matter

---

2. Huebner was subsequently convicted of robbing Fischer; Dubs and the minor were acquitted of the charge.

3. Dubs testified that he stated, "Ron, we should get out of here."

which cannot be manifested in the cold record before us.

Because the evidence and the reasonable inferences most favorable to the verdict support the conviction, we affirm the judgment.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I write separately to clarify and resolve, in my own mind at least, the reasons why we affirm this conviction.

To convict Dubs as an accomplice to Huebner's robbery, the State had to establish beyond a reasonable doubt that Dubs intentionally aided Huebner in robbing Timian. NDCC § 12.1–03–01(1)(b). In determining whether there was sufficient evidence to convict Dubs, we look only to the evidence most favorable to the guilty verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. *State v. Mertz*, 362 N.W.2d 410 (N.D.1985). Substantial evidence exists when a rational fact finder *could* have found the defendant guilty beyond a reasonable doubt. *City of Fargo v. McMorrow*, 367 N.W.2d 167 (N.D.1985).

Viewing the evidence in this light, we find that Dubs did not intercede, but stayed by Huebner's side while Huebner robbed Timian; that Timian believed Dubs was blocking his escape and was a threat; and that following the robbery Dubs fled and hid from the police. From this evidence the trial court presumably inferred that Dubs remained in place during the robbery, instead of leaving the scene, in order to aid in its commission by blocking Timian's escape, and that then Dubs bolted in order to avoid apprehension by the police. Although I would not have drawn them, I cannot say that these inferences are unreasonable or that a rational fact finder could not have found Dubs guilty beyond a reasonable doubt. I therefore concur in the result.