OPINION
Appellant, the State of Ohio, appeals from an order of the Clark County Municipal Court suppressing evidence against appellee, Thomas Wineberg, and terminating appellee's administrative license suspension. Police officers detained appellee in the back of their patrol car during a traffic stop for a minor violation. The municipal court found that the detention was an unreasonable seizure and suppressed evidence showing that appellee had been driving under the influence of alcohol in violation 4511.19(A). Because we find that appellee's detention in the back of the patrol car did not exceed the scope of a legitimate traffic stop, we reverse the determination of the lower court.
 I.
We draw the following set of facts from the trial court's opinion, and from the record to the extent the facts are not in dispute. On February 15, 1997, at approximately 9:51 p.m., Thomas Wineberg was driving his automobile westbound on State Route 40. Officers Mike Stitzel and James Hamm of the South Vienna Police Department noticed that the licence plate on Wineberg's car was not illuminated, as required under R.C. 4513.05. For this reason, they initiated a traffic stop.
After Wineberg pulled his car to the side of the road, Officer Hamm approached to inform him that his license-plate bulb was not working. Hamm then noticed a slight smell of alcohol about Wineberg. The officer requested that Wineberg turn over his driver's license and proof of insurance, and Wineberg complied. Officer Hamm then returned to his patrol car to check on Wineberg's driving status.
After Hamm gave Stitzel the license and proof of insurance, Wineberg, with Hamm's permission, got out of his car to check his license-plate bulb. Sometime shortly thereafter, to prevent Wineberg from wandering around, the police officers asked him to sit in the back of the patrol car. Wineberg then got into the patrol car, which had disabled rear-door handles preventing him from leaving without assistance from the officers. While he sat in the patrol car, the police officers noticed signs that Wineberg was intoxicated. The smell of alcohol about him was stronger in the closed police vehicle. Furthermore, his eyes were bloodshot and his speech was slurred. Noticing these signs, police asked Wineberg whether he had anything to drink that evening. Wineberg responded that he had taken a glass of wine with dinner.
Police then asked Wineberg to perform a number of field sobriety tests. Wineberg performed the finger-to-nose test well. He also performed the one-legged stand test well. However, he stumbled while performing the walk-and-turn field test and he showed signs of intoxication under the horizontal-gaze nystagmus test. Police, therefore, placed him under arrest. Subsequently, Wineberg submitted to a breath test that showed an alcohol concentration of .13 grams, exceeding the limit of .10 established by R.C. 4511.19(A)(3). Appellant was charged with operating a motor vehicle under the influence of alcohol. He received a only written warning about his license plate light. An administrative license suspension issued the day of his arrest.
Wineberg appealed his administrative license suspension and moved the trial court to suppress the evidence of his intoxication at trial. The trial court conducted a hearing on both matters on April 25, 1997. On May 20, 1997, the court entered a decision in favor of appellee Wineberg. In its opinion, the trial court reached the following conclusions:
 As the stop in this case occurred as a result of a license plate light infraction, the scope of the officers law enforcement powers was limited to the issuance of a citation for minor a misdemeanor offense. Normally a motorist stopped for a few minutes necessary to execute that citation. In the case at bar, the Defendant was detained beyond this point. Such an extension can be justified if the circumstances present reasonable suspicion that a more serious offense may have occurred. However, while Officer Hamm testified to noticing a "slight" odor of alcohol coming from the Defendant, he afforded this Court no other fact justifying extending Defendant's detention for purposes of investigating any other offense. Rather, Officer Hamm directed the Defendant into the rear of his cruiser; thereby placing him in "custody" — at least from the reasonable perspective of the Defendant. Moreover, Hamm did this not for purposes of furthering investigation, but to secure the Defendant. Even on this point, there is no indication that the Defendant was doing anything other than observing, with the permission of the officers, the license plate which was the subject of the officer's original stop.
* * *
 * * * [T]his Court does not find it reasonable to have detained the Defendant to the extent of placing the Defendant in the rear of the cruiser under the circumstances of this case. To this end, the officers exceeded their authority pursuant to Terry v. Ohio
(1968), 392 U.S. 1.
 Accordingly, the trial court suppressed the evidence of intoxication. The state now appeals from that decision.
 II.
The state raises two assignments of error on appeal. They are as follows:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED IN FINDING THAT THE BRIEF DETENTION OF APPELLEE IN THE REAR OF THE POLICE CRUISER DURING HIS LAWFUL STOP FOR A LICENSE PLATE LIGHT VIOLATION EXCEEDED THE SCOPE OF A PERMISSIBLE TERRY STOP.
 ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN TERMINATING APPELLEE'S ADMINISTRATIVE LICENSE SUSPENSION ON GROUNDS THAT APPELLEE WAS UNREASONABLY DETAINED IN THE POLICE CRUISER.
 Because both assignments of error turn on the same question — whether the traffic stop leading to Wineberg's arrest was reasonable — we will consider both together.
When a police officer stops a motor vehicle for a traffic violation, the stop itself constitutes a `seizure' within the meaning of both the Fourth Amendment of the United States Constitution; Berkemer v. McCarty (1984), 468 U.S. 420, 436-37,104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332-333; and Section 14, Article I, of the Ohio Constitution; see Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 11. The temporary detention involved in a traffic stop, however, is not considered "custody" triggering the Miranda protections of Fifth Amendment rights. Berkemer,468 U.S. at 440. It is, instead, more akin to a "Terry stop," during which a police officer may briefly detain a person and conduct an investigation upon a reasonable suspicion of criminal activity.Id. at 439 (citing Terry v. Ohio (1968), 392 U.S. 1).
Thus, the initial inquiry regarding the constitutionality of a traffic stop is whether a police officer's observations "lead him reasonably to suspect" that the person he wishes to detain has committed, is committing, or will commit an crime. Id. at 439 (quoting United States v. Brignoni-Ponce (1975), 422 U.S. 873,881). When police observe a traffic offense being committed, the initiation of a traffic stop does not violate Fourth Amendment guarantees, even if the stop was pretextual or the offense so minor that no reasonable officer would issue a citation for it.Whren v. United States (1996), ___ U.S. ___, 116 S.Ct. 1769,1774-75, 135 L.Ed.2d 89, 98-100. In the instant case, there is no dispute that Wineberg violated R.C. 4513.05 by driving with an unlit license plate. Accordingly, the initiation of the traffic stop by Officers Stitzel and Hamm violated no constitutional protections.
Nevertheless, even when the initial detention is permissible, a court must inquire whether the stop and the investigation are "reasonably related in scope to the purposes for their initiation." Berkemer, 468 U.S. at 439. A traffic stop implicates a lower level of constitutional protection because the resulting detention is "presumptively temporary and brief" and the police presence is "comparatively nonthreatening" an "noncoercive." Id. at 437, 440. The logical corollary of this rule is that, when a traffic stop exceeds the duration and scope of what is "reasonably related" to the traffic investigation (or the investigation of other crimes for which police develop reasonable suspicions), it becomes a custodial detention. "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. at 440. There is, however, no bright-line rule announcing when a traffic stop transforms into custody. See id. at 441 ("[P]olice and lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody.").
Concern over the reasonable scope of a minor traffic stop prompted the trial court to suppress the evidence in the case subjudice. The trial court held that the traffic stop was unreasonably extended. It also held that, by placing Wineberg in the rear of the police vehicle, the officers exceeded the scope of a legitimate traffic stop. Consequently, the court found that the detention was not reasonable and was in violation of theFourth Amendment. The trial court further held that, when police placed Wineberg in the rear of the vehicle, they took him into custody. That action, the court found, exceeded the law-enforcement powers of the police. Those powers, it observed, only extended to the issuance of a citation unless police held a reasonable suspicion that appellee had committed a crime other than a minor traffic offense. Thus, the court suppressed all the evidence against Wineberg that arose after his detention in the back of the patrol car
We note, as a side matter, that the court suppressed both evidence that implicated Fifth Amendment rights — namely, Wineberg's confession that he had taken a glass of wine with dinner — and evidence that did not — such as the smell of alcohol about him, his bloodshot eyes, and his slurred speech. See Statev. Henderson (1990), 51 Ohio St.3d 54, 57-58. It is axiomatic that responses to interrogation given by a suspect in custody who has not been read his Miranda rights are subject to the exclusionary rule. Id. at 57. In the instant case, however, the suppression of non-testimonial evidence raises constitutional questions not addressed by the parties in their appellate briefs or by the trial court in its order.
The trial court did not cite R.C. 2935.26. We presume, however, that the court had that statute in mind when it found that the officer's enforcement powers did not extend to arresting Wineberg for the traffic violation. Because the officers themselves observed the commission of a traffic offense, there was no lack of probable cause to make an arrest. Nevertheless, R.C. 2935 requires police officers to issue citations to, rather than arrest, those who commit minor misdemeanors unless certain statutory exceptions are applicable. An arrest made in violation of R.C. 2935.26, however, is not necessarily an unreasonable one for the purposes of the Fourth Amendment. Evidence taken in connection with such an arrest is, therefore, not necessarily "fruit of the poisonous tree." This court has stated previously that "[e]ven when an officer violates R.C. 2935.26 and arrests a person for a minor misdemeanor, evidence seized incident to that illegal arrest will not be suppressed because the arrest violates a statutory right, not a constitutional right." State v. Rivers
(Jan. 13, 1992), Clark App. No. 2745, unreported, at. 2 (citingState v. Holmes (1985), 28 Ohio App.3d 12).
Today, we need not address the question of whether a violation of R.C. 2935.26 could ever make an arrest unreasonable and warrant application of the exclusionary rule. We would reach that question only if we agreed with the court that police took Wineberg into custody when they placed him in the patrol car. We do not. We conclude, instead, that the trial court erred in finding that Wineberg's detention exceeded the reasonable scope of a traffic stop. The reasonableness of a detention is a question of law. We need not show the same deference to the trial court's findings on this question as we do toward its findings of fact. See State v. Klein (1991), 73 Ohio App.3d 486, 488.
We consider first whether the length of the detention in this case was unreasonable. There is no dispute that the officers had not completed checking Wineberg's license information before they noticed significant signs of his intoxication. Although detention for a license-check is unreasonable when there is no reasonable suspicion of any wrongdoing to justify the detention, State v.Chatton (1984) 11 Ohio St.3d 59, 63, when certain knowledge of a traffic violation exists, as here, the justification for a license-check is plain. "Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained." Delaware v. Prouse (1979), 440, U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660, 671. The fact that the officers intended to issue a written warning instead of a citation does not render the license checking procedure any less reasonable. See State v. Shiley (1991), 74 Ohio App.3d 230,232-33. Moreover, because the procedure was reasonable, the length of the detention was objectively justified by the circumstances of the initial detention. See State v. Robinette
(1997), 80 Ohio St.3d 234, 240. Further detention was then justified by the reasonable suspicion that Wineberg had driven his car while intoxicated. See id. Thus, we do not find the length of Wineberg's detention was constitutionally unreasonable.
Next, we consider whether Wineberg's detention in the patrol car exceeded the limits of a normal traffic stop. In Pennsylvaniav. Mimms (1977), 434 U.S. 106, 111, 98 S.Ct. 330, 333,54 L.Ed. 331, 337, the Supreme Court held that an officer who lawfully detained a vehicle for a traffic offense could order the driver out of the vehicle, even if the officer had no reasonable suspicion of danger to justify the order. The court held that the additional intrusion upon personal liberty caused by such an order was de minimis and any inconvenience to the driver was outweighed by concerns for the safety of police officers. Id. at 111. A number of Ohio courts have held that a police officer can also order a traffic misdemeanant to remain in the police cruiser for the length of his detention. See State v. Carlson (1995),102 Ohio App.3d 585, 596; State v. Warrell (1987), 41 Ohio App.3d 286,287; State v. Block (Dec. 15, 1994), Cuyahoga App. No. 67530, unreported, at 1, discretionary appeal denied (1995), 72 Ohio St.3d 1521. ; Middletown v. Downs (March 19, 1990), Butler App. No. CA89-06-094, unreported, at 3. Courts have reasoned that the latter order, like the order permitted under Mimms, is a modest incremental intrusion justified by the nature of the traffic stop itself. See Carlson, 102 Ohio App.3d at 595-96.
This appellate district has held, on a number of occasions, that the order to stay in a patrol car during a traffic stop requires no further constitutional scrutiny if the stop itself was justified. State v. Peterson (July 7, 1995), Montgomery App. No. 14733, unreported, at 6; State v. Barnett (August 31, 1994) Montgomery App. No. 14019, unreported, at 4; State v. Harris
(November 3, 1992), Montgomery App. No. 13279, unreported, at 5; see also State v. Stroud (Oct. 11, 1995), Montgomery App. No. 14832, unreported, at 3 (finding that the scope of a traffic stop was not exceeded when officer detained defendant in the rear of a patrol car "for safety reasons"). Consistent with these authorities, we hold that Wineberg's placement in the rear of the police car neither rendered his detention custody nor impermissibly exceeded the scope of a conventional traffic stop.
Wineberg has emphasized the fact that the rear doors of the patrol car did not permit him to exit the car unassisted. We do not find, however, that this fact merits distinguishing the instant case from the above-cited authorities. Most of those cases do not make clear whether the patrol cars' doors were locked or unlocked. Recently, the United States Sixth Circuit Court of Appeals held that it is permissible for a police officer to detain a traffic offender in a locked police car for the length of the detention. United States v. Guimond (C.A. 6, 1997), 116 F.3d 166,169-70. We find that case persuasive. It is not a detainee's freedom of movement that makes a traffic stop constitutionally unoffensive. It is, instead, the relative brevity, limited scope, and non-threatening character of the police intrusion. SeeBerkemer, 468 U.S. at 436-40.
Wineberg also attempts to distinguish his case by stressing the particularly minor character of his traffic offense. He notes that, in some of the other cases permitting detention in police cars, the offenses were considerably more serious. For example, in Warrell, the defendant had overturned his car by driving off the side of the road. 41 Ohio App.3d at 286. Also, in Barnett, the defendant was already a murder suspect at the time of his questioning. Supra, at 2. Most of the cases cited above, however, may not be so distinguished. See, e.g., Carlson,102 Ohio App. 3d at 588 (traveling ten m.p.h above the speed limit);Block, supra, at 1 (running a stop sign); Harris, supra, at 1 (operating without tail lights); Stroud, supra, at 4 (excessive smoke); Guimond, 116 F.3d at (warning citation issued for speeding). Probable cause that an offense has been committed, however minor, alone is sufficient to justify a temporary detention. See Whren, 116 S.Ct. at 1777. Safety concerns, for both police officers and motorists, are what undergird the reasonability of detention in a police car during a traffic stop. See State v. Mertz (N.D. 1985), 362 N.W.2d 410, 413, discussed inState v. Evans (1993), 67 Ohio St.3d 405, 408. Those concerns do not diminish significantly just because the precipitating traffic offense is a minor one. Thus, we are not persuaded to distinguish the instant case from the authorities that we have cited.
For the foregoing reasons, both of the state's assignments of error are sustained. The order of the trial court suppressing the evidence against appellee is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.
Judgment Reversed and Cause Remanded
FAIN, J., and GRADY, J., concur.
Copies mailed to:
Michael Sheils
Kathryn A. Reckley
Robert A. Wineberg
Hon. Richard P. Carey