# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1248
_____

United States of America

*Plaintiff - Appellee*

v.

Mark Fuehrer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: September 23, 2016
Filed: December 28, 2016

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Mark Fuehrer pled guilty to one count of possession with intent to distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The district court[1] sentenced Fuehrer to 188 months' imprisonment.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

On appeal, Fuehrer challenges the search of his vehicle and asserts that the district court erred in sentencing him as a career offender. We affirm.

I.

In December 2014, Josh Mulnix, a Special Agent with the Iowa Division of Narcotics Enforcement, received information from a confidential informant that Fuehrer was distributing methamphetamine. The informant had seen Fuehrer with methamphetamine at his residence and told Agent Mulnix that Fuehrer's methamphetamine source was "Marty." After obtaining this information, Agent Mulnix obtained judicial authorization to affix a global positioning system ("GPS") tracking device to Fuehrer's vehicle.

While the GPS device was affixed to Fuehrer's vehicle, Fuehrer drove to the home of Martin Lawrence in Monticello, Iowa. Investigators learned that Lawrence was being investigated by the Drug Enforcement Administration in Cedar Rapids, which had conducted multiple controlled purchases of ice methamphetamine from Lawrence.

In January 2015, officers observed Fuehrer driving a second vehicle. Agent Mulnix obtained authorization to attach a GPS device to that vehicle and began tracking that vehicle as well. Investigators believed that Fuehrer would be transporting methamphetamine from Lawrence's home on January 11, 2015. Officers intended to attempt to conduct a traffic stop on Fuehrer's vehicle after he left Lawrence's home. Officers also believed that, even if Fuehrer committed no traffic violation, officers would make an investigatory stop based on the evidence gathered during the investigation.

Agent Mulnix coordinated with the Dubuque Drug Task Force to ensure that officers would be able to observe Fuehrer's vehicle after leaving Lawrence's home.

Deputy Adam Williams was positioned to observe Fuehrer's vehicle and began running a stationary radar, which he had been trained to use and did, in fact, use nearly every day. Deputy Williams stopped Fuehrer's vehicle after observing Fuehrer driving 66 miles per hour in an area where the speed limit was 65 miles per hour.

During the traffic stop, Fuehrer was unable to provide a license. Deputy Williams asked Fuehrer to sit in the patrol car while he completed paperwork for the traffic violation. During this time, a second deputy, Deputy Kearney, arrived with a trained narcotics canine. Deputy Kearney conducted an open-air sniff of Fuehrer's vehicle and the canine alerted to the presence of narcotics. After the dog-sniff search was complete, Deputy Williams finished the tasks related to the traffic stop and wrote Fuehrer a warning for the traffic violation. Deputies Williams and Kearney then informed Fuehrer that the canine had alerted to the presence of narcotics, and Deputy Williams gave Fuehrer his <u>Miranda</u>[2] warnings. Officers searched the vehicle and found 26.09 grams of methamphetamine.

Fuehrer was charged with possession with intent to distribute a controlled substance. Before trial, Fuehrer filed a motion to suppress, arguing that the stop of his vehicle was a pretext stop in violation of his Fourth Amendment rights against unreasonable search and seizure. At the suppression hearing, Deputy Williams testified as to the accuracy of the radar he used the night of the traffic stop. Deputy Williams testified that the radar was affixed to the patrol car he drove every day for approximately six years. Deputy Williams stated that he checked the accuracy of the radar by balancing the speed displayed by the radar with the speed displayed on the speedometer of his vehicle. If he detected a discrepancy, Deputy Williams would use another method to check the radar's accuracy. Deputy Williams also testified that the radar had never had any discrepancies since he began using it and that "[i]t works the

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

way it is supposed to and displays accurate information." The magistrate judge[3] recommended denying the motion, finding that the traffic stop was supported by probable cause that Fuehrer was driving in excess of the speed limit. The magistrate judge also found that there was no evidence that the dog sniff prolonged the traffic stop. The district court subsequently adopted the magistrate judge's recommendation.

Following the denial of his motion to suppress, Fuehrer entered a guilty plea. The probation office prepared a presentence investigation report ("PSR"), which designated Fuehrer as a career offender. As a career offender, Fuehrer's base offense level increased from level 26 to level 34. The PSR determined that Fuehrer was a career offender based on two prior convictions for controlled substance offenses. On December 3, 1998, Fuehrer was arrested for possessing cocaine with intent to distribute. Fuehrer pled guilty in state court and was sentenced on September 10, 1999. On May 25, 2000, Fuehrer was arrested for the distribution of cocaine base in controlled purchases from October 21, 1998; October 26, 1998; and December 21, 1998. Fuehrer was indicted in the Northern District of Iowa and pled guilty to Count 1, which involved distribution of cocaine base on October 21, 1998. Fuehrer was sentenced on August 20, 2001.

Fuehrer objected to his designation as a career offender. He argued that the prior controlled-substance convictions were related and should not be counted separately. The district court applied the career offender enhancement and sentenced Fuehrer to 188 months' imprisonment.

---

[3]The Honorable Jon S. Scoles, United States Chief Magistrate Judge for the Northern District of Iowa.

## II.

### A. Fuehrer's Fourth Amendment Rights

"This Court reviews the facts supporting a district court's denial of a motion to suppress for clear error and reviews its legal conclusions de novo." United States v. Cotton, 782 F.3d 392, 395 (8th Cir. 2015). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (quoting United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006)).

### 1. The Traffic Stop

Fuehrer contends that the traffic stop in this case was merely pretextual. "Pretextual traffic stops are a violation of the Fourth Amendment." United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993). However, if police observe a traffic violation, no matter how minor, there is probable cause to stop the vehicle. United States v. Mendoza, 677 F.3d 822, 827 (8th Cir. 2012); Eldridge, 984 F.2d at 948. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (quotation omitted). "Similarly, it is irrelevant that the officer would have ignored the violation but for his ulterior motive." Id.

Because Deputy Williams had an objectively reasonable basis to believe Fuehrer was speeding, Deputy Williams had probable cause for the traffic stop. See United States v. Coney, 456 F.3d 850, 857 (8th Cir. 2006) ("We completely agree . . . that [the officer] had probable cause to stop the . . . van because he objectively

had a reasonable basis for believing that the van was speeding."). Such probable cause existed regardless of any motivation to search for drugs. Fuehrer argues that there was no probable cause because of the standard deviation on radar equipment of at least one mile per hour. At the suppression hearing, Deputy Williams testified that he received training in the use of stationary radar and that, prior to joining the drug task force, he used stationary radar nearly every day. Deputy Williams stated he was assigned to his patrol vehicle in 2009 and the radar has been affixed to the vehicle's dash and windshield the entire time. Further, Deputy Williams testified that he checked the accuracy of the radar he used the night of the traffic stop earlier that day and had no reason to believe the radar was not functioning correctly. Finally, the standard deviation of radar equipment that Fuehrer relies on is associated with the tuning fork method of testing the radar, which Deputy Williams did not use the day of the traffic stop. As a result, Deputy Williams' observation of the traffic violation based on his use of the radar gave him probable cause to stop the vehicle, and his subjective intent to detain the vehicle for a dog-sniff search is irrelevant.

## 2. The Dog Sniff

Fuehrer argues that he was unconstitutionally detained while officers executed the dog sniff. "[I]f a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed." United States v. Ovando-Garzo, 752 F.3d 1161, 1163 (8th Cir. 2014) (alteration in original) (quoting United States v. Bueno, 443 F.3d 1017, 1025 (8th Cir. 2006)). An officer may complete routine tasks during a traffic stop, which "can include 'a computerized check of the vehicle's registration and the driver's license and criminal history, as well as the preparation of a citation or warning.'" Id. (quoting United States v. Quintero-Felix, 714 F.3d 563, 567 (8th Cir. 2013)). "However, once an officer finishes the tasks associated with a traffic stop, 'the purpose of the traffic stop is complete and further detention . . . would be unreasonable unless something that occurred during the traffic stop generated the

necessary reasonable suspicion to justify further detention[.]'" Id. at 1163–64 (alterations in original) (quoting United States v. Flores, 474 F.3d 1100, 1103 (8th Cir. 2007)).

The Supreme Court has held that "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. at 407. Thus, as long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful.

In this case, Deputy Kearney arrived within two minutes of Deputy Williams initiating the traffic stop. Because Fuehrer did not have a license, Deputy Williams asked Fuehrer to sit in the patrol car while he completed paperwork. Deputy Kearney conducted the dog sniff while Fuehrer was in the patrol car. Deputy Williams completed the tasks related to the traffic stop and wrote Fuehrer a warning after the dog sniff was complete and the dog had alerted to the presence of narcotics. Thus, there is no evidence that the dog sniff unlawfully prolonged the traffic stop beyond what was necessary to complete the stop. Fuehrer's reliance on Rodriguez v. United States, 135 S. Ct. 1609 (2015), is misplaced. In Rodriguez, the officer had already issued the driver a warning before conducting the dog-sniff search. Id. at 1613. The Supreme Court held that the search was unlawful because it prolonged the traffic stop at issue in that case. Id. at 1615–16. The facts just set forth distinguish the instant case from Rodriguez.

## B. Sentencing

Fuehrer argues that his two prior convictions are related under U.S.S.G. § 4A1.2(a)(2) and, thus, he does not qualify as a career offender. "We review de

novo the district court's construction and interpretation of the criminal history provisions of the sentencing guidelines, and we review for clear error the district court's application of the guidelines to the facts." United States v. Williams, 533 F.3d 673, 676 (8th Cir. 2008) (quoting United States v. Borer, 412 F.3d 987, 991–92 (8th Cir. 2005)).

> Under the Guidelines, a defendant is a career offender if

> > (1) the defendant was at least eighteen years old at the time of the instant conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Prior convictions must be counted separately to satisfy the "two prior felony convictions" requirement. Id. § 4B1.2(c).

> > Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

Id. § 4A1.2(a)(2).

Fuehrer committed the federal predicate offense on October 21, 1998 and the state predicate offense on December 3, 1998. Fuehrer was arrested for the state offense on December 3, 1998, but was not arrested on the federal offense until May 25, 2000. As a result, his two prior offenses are not separated by an intervening

-8-

arrest.  See Williams, 533 F.3d at 676–77.  Further, the Government concedes that there was no intervening arrest.

Because there was no intervening arrest, we consider whether Fuehrer's prior sentences "resulted from offenses contained in the same charging instrument" or "were imposed on the same day."  See U.S.S.G. § 4A1.2(a)(2).  Fuehrer was charged in separate charging instruments, one in state court and one in federal court.  Further, Fuehrer's sentences for his prior convictions were imposed on different days.  Fuehrer's sentence for his state conviction was imposed on September 10, 1999.  Fuehrer's sentence for his federal conviction was imposed on August 20, 2001.  As a result, these two convictions should be counted separately as two prior felony convictions for controlled substance offenses.

Fuehrer nevertheless argues that his two prior convictions should be counted together because they were part of a single course of conduct.  Fuehrer asserts that the conduct underlying his state conviction was part of the same criminal scheme, and was committed during the same time period, as the federal offense.  Thus, Fuehrer claims his state conviction was relevant to his federal conviction and they should be counted together.  This argument, however, is based on an erroneous reading of the Guidelines and ignores the straightforward application of U.S.S.G. § 4A1.2(a)(2).

Fuehrer claims specifically that, under U.S.S.G. § 4A1.2(a)(1), his federal conviction in 2001 is the "instant offense" and that the conduct underlying his state conviction in 1999 was part of the "instant offense."  However, under the Guidelines, "instant offense" refers to the current offense for which a defendant is being sentenced.  U.S.S.G. § 1B1.1 cmt. n.1(H).  In the context of the career-offender analysis, a prior sentence will not be counted if it is for conduct relevant to the instant offense.  See id. § 4A1.2 cmt. n.1.

In this case, Fuehrer's "instant offense" is possession of methamphetamine on January 11, 2015. Fuehrer's prior state and federal convictions, in 1999 and 2001, respectively, for distributing crack cocaine do not involve the same underlying conduct as his 2015 possession of methamphetamine. Thus, neither conviction is relevant to the "instant offense." Fuehrer's argument incorrectly applies the Guidelines. As a result, based on the correct career-offender analysis, Fuehrer has two qualifying prior convictions. The district court did not err by sentencing Fuehrer as a career offender.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____