2017 ND 141

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Michael A. PHELPS, Defendant and Appellant**

No. 20160196

Supreme Court of North Dakota.

Filed 6/7/2017

Brian D. Grosinger (argued) and Gabrielle J. Goter (on brief), Assistant State's Attorneys, Mandan, ND, for plaintiff and appellee.

Michael R. Hoffman, Bismarck, ND, for defendant and appellant.

Kapsner, Justice.

[¶ 1] Michael Phelps appeals from a criminal judgment entered after he conditionally pleaded guilty to possession of methamphetamine with intent to deliver after the district court denied his motion to suppress evidence. Phelps argues the

district court erred in denying his motion to suppress evidence because the traffic stop was not supported by reasonable suspicion and the dog sniff unreasonably extended the traffic stop. We conclude: 1) the district court did not err in finding the officer had reasonable suspicion to initiate a traffic stop; and 2) the dog sniff conducted on Phelps' vehicle did not require independent reasonable suspicion because it occurred contemporaneously to the completion of duties related to the initial traffic stop. We affirm the criminal judgment.

## I

[¶ 2] On September 16, 2015, a law enforcement officer executed a traffic stop on Phelps in Morton County. The officer went to the door of the vehicle and spoke with Phelps, mentioned Phelps' boat trailer was without a plate, and obtained his license and registration. As the officer returned to his vehicle to run Phelps' information, Sergeant Sass arrived on scene with a K–9 unit. The officer exited the vehicle, Phelps exited his, and met the officer at the back of the boat trailer. The two spoke, and Sergeant Sass ran the drug dog around Phelps' vehicle. The dog indicated the presence of drugs. The officers conducted a search of the vehicle and discovered what appeared to be methamphetamine packaged in individual bags. Phelps was arrested and charged with possession of methamphetamine with intent to deliver. Phelps moved to suppress evidence, and the district court held a hearing. In his motion to suppress, Phelps argued there was no legal basis for the traffic stop, and the stop was unreasonably extended after the purpose for the stop was concluded.

[¶ 3] At the hearing, the district court heard testimony from the arresting officer, the officer who conducted the K–9 sniff, and Phelps. Phelps offered the arresting officer's in-car video of the traffic stop as an exhibit. Phelps argued the traffic stop was conducted on the basis of having no plate on his boat trailer, which does not constitute a violation of any traffic law. The arresting officer testified the stop was conducted because of the lack of plate and also for an inoperable passenger side brake light on the trailer. The arresting officer testified Phelps did not immediately pull over after the activation of the officer's emergency lights. The arresting officer testified he took Phelps' information in order to write a citation. Sergeant Sass testified he arrived on the scene of the traffic stop because narcotics task force officers informed him they wanted to conduct a K–9 sniff. Sergeant Sass testified he conducted the K–9 sniff, at which point the dog indicated the presence of drugs. At the hearing, Phelps argued he received one citation at the scene of the stop and one after he was already detained at the Morton County jail. Phelps argued this was significant because failure to display a license plate on his boat trailer is not a valid moving violation. Phelps argued the officer later came up with a faulty brake light on his trailer as an after-the-fact basis for the traffic stop.

[¶ 4] The district court denied Phelps' motion to suppress evidence. The court found failure to display a license plate on the boat trailer did not constitute a moving violation. However, the court found, based upon review of the video, Phelps' trailer had a faulty brake light, which constituted a moving traffic violation supporting the traffic stop. The district court stated, "Even if the incorrect warning was issued at the scene, the Court has determined a legitimate traffic stop was initiated due to the faulty brake light. The faulty brake light stop allows for the investigative detention of Defendant and allows for the time to complete the traffic stop." The district court ultimately concluded, "a good traffic stop was initiated for the faulty

brake light. During the process of the traffic stop the dog sniff provided sufficient reasonable suspicion to continue the investigative stop until the discovery of the controlled substance in the pickup and the arrest of the Defendant." Phelps entered a conditional guilty plea, and the district court entered a criminal judgment. Phelps filed a notice of appeal.

## II

[¶ 5] We review a district court's decision on a motion to suppress as follows:

> [T]his Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

State v. Knox, 2016 ND 15, ¶ 6, 873 N.W.2d 664 (citations omitted). "The Fourth Amendment guarantees 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "[W]e have previously explained, 'traffic violations, even if considered common or minor, constitute prohibited conduct and, therefore, provide officers with requisite suspicion for conducting investigatory stops.'" State v. Fields, 2003 ND 81, ¶ 7,

662 N.W.2d 242 (quoting State v. Storbakken, 552 N.W.2d 78, 80–81 (N.D. 1996)).

### A

[¶ 6] Phelps argues the district court erred by finding the officer had a valid basis for the traffic stop. At the suppression hearing, Phelps argued he did not commit a traffic violation based upon a failure to display a license plate on his boat trailer. The district court agreed and found there was no valid traffic violation for failing to display a license plate on the trailer. However, we have recognized, "an officer's objectively reasonable mistake, whether of fact or law, may provide the reasonable suspicion necessary to justify a traffic stop." State v. Hirschkorn, 2016 ND 117, ¶ 14, 881 N.W.2d 244 (citing Heien v. North Carolina, — U.S. —, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014)). But the district court found Phelps' trailer had a faulty brake light that supported reasonable suspicion to initiate a traffic stop.

[¶ 7] There was conflicting testimony regarding whether the officer who made the stop was aware of the faulty brake light. When reviewing a district court's decision on a motion to suppress evidence, this Court "defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance." Knox, 2016 ND 15, ¶ 6, 873 N.W.2d 664. The district court noted the officer testified he noticed the rear brake light was out. The district court also noted Phelps testified the officer did not mention the brake light issue during the stop. At the suppression hearing, the officer testified he observed the boat trailer had no license plate and that he "also observed that the right brake light was not operable." Phelps testified at the hearing he believed his trailer lights were operable on the day of the stop because he had checked them that day. The officer was asked on cross-examination whether he told Phelps about the brake light viola-

tion. The officer stated, "I believe I let him know." The district court found, through observation of video evidence, the boat trailer had an inoperable brake light. The district court "determined the light was faulty despite [Phelps'] self-serving testimony." This Court's standard of review on a district court's decision on a motion to suppress "recognizes the importance of the trial court's opportunity to observe the witnesses and assess their credibility." *State v. Mercier*, 2016 ND 160, ¶ 7, 883 N.W.2d 478 (citations omitted). The district court's finding the trailer had a faulty brake light and gave the officer a valid basis for the stop of Phelps' vehicle is "not contrary to the manifest weight of the evidence" and is supported by the police video and testimony in the record. *Knox*, at ¶ 6.

## B

■ [¶ 8] Phelps argues the district court erred when it denied his motion to suppress evidence because the dog sniff unlawfully extended the traffic stop beyond the time it took to issue a citation. In *Illinois v. Caballes*, the United States Supreme Court stated, "the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view,—during a lawful traffic stop, generally does not implicate legitimate privacy interests." 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (internal quotations and citations omitted). However, the Court stated, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* at 407, 125 S.Ct. 834. The Court elaborated by stating, "[i]n our view, conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable

manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy. Our cases hold that it did not." *Id.* at 408, 125 S.Ct. 834.

[¶ 9] The United States Supreme Court further examined the lawful limits of K–9 sniffs at traffic stops in *Rodriguez v. United States*, ─── U.S. ───, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). The Supreme Court stated:

> Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop . . . and attend to related safety concerns. . . . Because addressing the infraction is the purpose of the stop, it may "last no longer than it is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

*Id.* at 1614 (citations omitted). The Supreme Court stated, "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop[.]' " *Id.* at 1616 (citations omitted).

[¶ 10] We have recognized, "[a] reasonable period of detention includes the amount of time necessary for the officer to complete his duties resulting from the traffic stop." *Fields*, 2003 ND 81, ¶ 8, 662 N.W.2d 242 (quoting *State v. Mertz*, 362 N.W.2d 410, 412 (N.D. 1985)). This Court recognized those duties may include:

> request[ing] the driver's license and registration, request[ing] that the driver step out of the vehicle, request[ing] that the driver wait in the patrol car, conduct[ing] computer inquiries to determine the validity of the license and registration, conduct[ing] computer

searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and mak[ing] inquiries as to the motorist's destination and purpose.

*Fields*, at ¶ 8 (quoting *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001)). As a result, an investigative detention may continue as long as reasonably necessary to complete these duties. Under *Rodriguez*, 135 S.Ct. at 1614, a dog sniff is lawful as long as it does not "prolong" the stop beyond the time it takes to complete the above duties.

[¶ 11] The district court determined Phelps was not detained unreasonably prior to the dog sniff. The district court stated:

The Court does find that Defendant was not detained beyond the reasonable time necessary to conduct duties relating to a common traffic stop and issuing a warning citation. SGT Sass was present when [Officer] Brandner returned to his patrol car to check warrants and process the citation or warning. Brandner met Defendant at the rear of the trailer with what appears to be a citation or warning for Brandner. The two discussed something and moved to the side. As soon as they moved to the side out of the camera view, SGT Sass and his dog went to work. The minimal amount of time noted above for SGT Sass to run the dog around the car is easily a reasonable amount of time for Brandner to explain the citation process to Defendant and give him the warning.

[¶ 12] The district court found "any investigatory detention of [Phelps] did not go beyond the time reasonably necessary to conduct duties relating to a traffic stop and issue the citation or warning. Once the dog had alerted and SGT Sass notified the officers of this, reasonable suspicion kicks in and the further detention of [Phelps]

pending the search of the pickup was appropriate." We agree. In *Fields*, there was a clean break in terms of where the initial seizure for a traffic violation ended and where a new seizure for purposes of a drug investigation began. 2003 ND 81, ¶ 4, 662 N.W.2d 242. The officer gave the citation to the motorist, said goodbye, and turned to walk back to his cruiser. *Id.* The officer then came back to the vehicle to engage in further questioning, asked the motorist to exit the vehicle, and the two waited about 30 minutes for the K–9 unit to arrive. *Id.* This Court concluded the purpose of the initial traffic stop had ceased, and the continued detention pending arrival of the K–9 unit required independent reasonable suspicion. *Id.* at ¶ 12. In *State v. Asbach*, 2015 ND 280, ¶ 14, 871 N.W.2d 820, a majority of this Court concluded a seizure was not unreasonably extended where the officer "checked the [driver's and passenger's] driver's licenses, checked for outstanding warrants, and spoke with each of them about their trip" and did not issue a warning or citation prior to obtaining consent to search the vehicle.

[¶ 13] In this case, the officer's completion of duties related to the initial traffic stop and the dog sniff of Phelps' vehicle occurred virtually contemporaneously. After stopping Phelps' vehicle, the officer took Phelps' information and walked to his squad car. Sergeant Sass was already on site with a K–9 unit. The officer presumably checked Phelps' information and exited his vehicle. Phelps exited his vehicle when the officer was at the back of his boat trailer. Phelps and the officer appeared to have a conversation at the back of the boat trailer. As the two spoke, Sergeant Sass brought the dog around the vehicle and the dog alerted shortly thereafter. The district court's finding Phelps was not detained beyond the time reason-

ably necessary to complete the duties related to the traffic stop is supported by the record and is not clearly erroneous.

### III

[¶ 14] We affirm the criminal judgment.

[¶ 15] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.