# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 46

State of North Dakota,　　　　　　　　　　　　Plaintiff and Appellee

　　　　v.

Michael Lee Stands,　　　　　　　　　　　　Defendant and Appellant

## No. 20200179

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Derek K. Steiner, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**VandeWalle, Justice.**

[¶1]   Michael Lee Stands appealed from a criminal judgment and an order denying his motion to suppress evidence after entering a conditional plea of guilty to possession with intent to manufacture or deliver methamphetamine and unlawful possession of drug paraphernalia. We affirm.

I

[¶2]   On November 5, 2019, Officer Heidi Witzel with the Fargo Police Department initiated a traffic stop when Stands failed to stop at a stop sign. Stands exited the vehicle and stood at its rear left fender. Witzel testified that Stands kept putting his hands in his pockets. Stands did not provide Witzel with identification, but gave her his name and date of birth. After acquiring his name and date of birth, Witzel went back to her patrol vehicle. At that point, Witzel requested a drug dog come to the scene and ran a records check on Stands. Witzel then exited her patrol vehicle and went back over to Stands. The records check later revealed Stands did not have current driving privileges.

[¶3]   After exiting her patrol vehicle, Witzel directed Stands to move to the rear of it. Witzel then asked Stands, "Do you have anything on you I should know about right now?" and "Can I search you?" Witzel testified that Stands raised his hands at shoulder height, mumbled, and "shook his head yes."

[¶4]   When Stands raised his hands, Witzel said she observed what appeared to be a silver scale in Stands' pocket. Witzel took the scale out of his pocket and noticed what she believed to be meth residue on it. She also located a pipe and cash on Stands during the search. After the search of Stands' person, Witzel detained him and placed him in the back of her patrol car. Stands told Witzel he was a user and "had used approximately five hours ago."

[¶5]   Approximately thirty-five minutes after the initial stop, Detective Bret Witte arrived with a drug detection dog. The dog positively alerted on Stands'

vehicle, and the vehicle was searched. Methamphetamine was discovered in the vehicle.

[¶6] On appeal, Stands argues he did not consent to the search of his person. He also argues the traffic stop was unlawfully extended when Witzel asked if he had anything on him, if she could search him, and subsequently searched him. Additionally, Stands argues the stop was unlawfully extended when officers detained him and waited for a drug dog to arrive on the scene.

II

[¶7] Our standard of review for a district court's decision on a motion to suppress is well established:

> In reviewing a district court's decision on a motion to suppress evidence, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Hawkins*, 2017 ND 172, ¶ 6, 898 N.W.2d 446 (quoting *State v. Odom*, 2006 ND 209, ¶ 8, 722 N.W.2d 370).

III

[¶8] Stands argues he did not provide consent for Witzel to search him. The United States and North Dakota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; N.D. Const. art. I, § 8.

> Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement. Consent is a well-established exception to the warrant requirement. The scope of an individual's consent is determined by considering what an objectively reasonable person would have understood the consent

2

to include. The reasonableness inquiry is applied to the understanding of an officer who is conducting a search. Whether a search exceeds the scope of consent is a factual question, subject to the clearly erroneous standard of review.

*Odom*, 2006 ND 209, ¶¶ 9-10 (internal citations and quotation marks omitted). "Consent must be proven by clear and positive testimony." *State v. Mitzel*, 2004 ND 157, ¶ 17, 685 N.W.2d 120. "Consent must be unequivocal." *Id.* Shrugging is insufficient to constitute consent. *See id.*

[¶9] Here, the district court found Stands gave Witzel consent to search his person. After Witzel asked to search him, the court noted Stands shrugged, mumbled, nodded, and lifted his hands before Witzel began searching him. Witzel understood Stands' actions as manifesting consent to search his person.

[¶10] Although a shrug is not enough to manifest a person's consent, Stands also mumbled, nodded, and lifted his hands according to Witzel's testimony. Nodding is understood broadly as manifesting agreement or consent. Stands also raised his hands allowing Witzel to easily search him. These two actions taken together would allow an objectively reasonable person to understand Stands was consenting to a search of his person. Therefore, sufficient competent evidence exists showing Stands' consented to the search of his person, and the district court's finding that Stands consented is not contrary to the manifest weight of the evidence.

IV

[¶11] Stands contends Witzel unlawfully extended the traffic stop by asking if he had anything on him, if she could search him, and subsequently searching him. "When conducting a traffic stop, an officer can temporarily detain the traffic violator at the scene of the violation." *State v. Fields*, 2003 ND 81, ¶ 8, 662 N.W.2d 242. "[A] reasonable period of detention includes the amount of time necessary for the officer to complete his duties resulting from the traffic stop." *Id.* (quoting *State v. Mertz*, 362 N.W.2d 410, 412 (N.D. 1985)). Those duties may include:

Request[ing] the driver's license and registration, request[ing] that the driver step out of the vehicle, request[ing] that the driver wait in the patrol car, conduct[ing] computer inquiries to determine the validity of the license and registration, conduct[ing] computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and mak[ing] inquiries as to the motorist's destination and purpose.

*Id.* (quoting *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001)). "As a result, an investigative detention may continue as long as reasonably necessary to complete these duties." *State v. Phelps*, 2017 ND 141, ¶ 10, 896 N.W.2d 245.

[¶12] In *State v. Vetter*, we examined a traffic stop where an officer asked a question outside the purposes of the stop. 2019 ND 138, ¶ 4, 927 N.W.2d 435. Similar to Stands, the defendant in *Vetter* argued the scope and duration of the stop was unlawfully extended because the officer asked whether the defendant had anything illegal in his car. *Id.* We explained, "Because a routine traffic stop is relatively brief, it is more like a '*Terry* stop' than an arrest." *Id.* at ¶ 6. "Unrelated inquiries are permitted during a stop as long as they do not prolong the stop and extend the time the individual is detained." *Id.* "Our cases have held that *after* the completion of the traffic stop duties, if the officer continues the seizure, he violates the Fourth Amendment 'unless the officer has a reasonable suspicion for believing that criminal activity is afoot.'" *Id.* at ¶ 8 (quoting *Fields*, 2003 ND 81, ¶ 10).

[¶13] "[T]he Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Rodriquez v. United States*, 575 U.S. 348, 354 (2015). Although, a traffic stop "'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id.* at 354-55 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "However an 'officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.'" *Vetter*, 2019 ND 138, ¶ 9 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

[¶14] In *Vetter*, the defendant alleged the officer prolonged the traffic stop when the officer asked a question about illegal contents in the vehicle and handed off the ticket writing to another officer. 2019 ND 138, ¶ 14. The time it took to complete these actions took less than a minute. *Id.* at ¶ 15. We held this short amount of time did not unreasonably prolong the traffic stop. *Id.* "Absent evidence of an officer deliberately delaying a stop so that, for example, a drug-detecting dog may arrive, such minor inefficiencies in traffic stops are unlikely to establish a Fourth Amendment violation." *Id.* at ¶ 16 (internal citation omitted). Requests for consent to search are permissible so long as they do not prolong and "measurably extend the duration of the stop." *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(e) (6th ed. 2020). "The Fourth Amendment does not call us to scrutinize traffic stops for unnecessary casual conversation or impose a constitutional mandate for time efficiency over incidental questions or conversation." *Vetter*, at ¶ 18.

[¶15] At the time Witzel asked Stands if he had anything on him and if she could search him, the purposes of the traffic stop had not been completed. Witzel had not issued Stands a warning or a ticket. She had just exited her vehicle after requesting a drug dog and running a records check, and then she resumed speaking with Stands. Stands does not claim that Witzel deliberately delayed the stop so a drug dog could arrive on the scene. The district court made no findings regarding the time it took for Witzel to ask two questions: "Do you have anything on you I should know about right now?" and "Can I search you?" However, absent evidence of deliberately delaying the traffic stop, the Fourth Amendment does not require us to "impose a constitutional mandate for time efficiency over incidental questions" such as the ones asked by Witzel. *See Vetter*, 2019 ND 138, ¶ 18. Witzel asking these two questions did not prolong or measurably extend the traffic stop.

[¶16] We have previously said, "A stop may be prolonged only if the officer has reasonable suspicion to justify detaining the individual for inquiries unrelated to the stop." *Vetter*, 2019 ND 138, ¶ 6 (citing *Rodriguez*, 575 U.S. at 355). In addition, an officer may also extend or expand the scope of a traffic stop if the encounter becomes consensual. *United States v. Peralez*, 526 F.3d 1115, 1120 (8th Cir. 2008); *see also United States v. Murillo-Salgado*, 854 F.3d 407, 417

5

(8th Cir. 2017) (reiterating stops may be extended if the encounter becomes consensual post-*Rodriguez*). Once Stands provided Witzel with consent to search his person, the continued encounter became consensual and was permissible under the Fourth Amendment. Once Stands provided his consent for the search, he also provided consent for the continued encounter and time necessary to search him. Therefore, Witzel did not unlawfully extend the traffic stop when she questioned and searched Stands.

V

[¶17] Stands also argues the traffic stop was unlawfully extended when the officers detained him and waited for the drug detection dog. As noted above, an officer can continue to detain an individual at a traffic stop for purposes unrelated to the traffic stop when "the officer has reasonable suspicion to justify detaining the individual for inquiries unrelated to the stop." *Vetter*, 2019 ND 138, ¶ 6. We apply an objective standard to determine whether an officer has reasonable suspicion. *Id.* at ¶ 9.

> [T]his Court looks at the totality of the circumstances, applies an objective standard, and takes into account the inferences and deductions that an investigating officer would make that may elude a layperson. The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.

*Id.* (quoting *State v. Adan*, 2016 ND 215, ¶ 12, 886 N.W.2d 841).

[¶18] Although Stands did not provide consent to search the vehicle, the consensual search of his person resulted in the discovery of the silver scale with meth residue on it. A reasonable person in Witzel's position would be justified in inferring Stands was or was about to be engaged in unlawful activity by the discovery of the scale in his pocket. The discovery of the scale resulted in reasonable suspicion that Stands engaged in criminal activity. This reasonable suspicion justified Stands' continued detention at the scene until a drug dog could arrive. The district court did not err when it found Witzel had reasonable

6

suspicion to detain Stands until a drug dog could arrive following the search of his person.

VI

[¶19] We affirm the judgment and the district court's order denying Stands' motion to suppress evidence.

[¶20]  Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte

7